UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELINDA ESPINELI AND MOHOMMAD MOGHADDAM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TOYOTAL MOTOR SALES U.S.A., INC., a California Corporation; TOYOTA MOTOR CORPORATION, a Japanese Corporation; and DOES 1 through 100, inclusive.<br><br>Defendants. | No. 2:17-cv-00698-KJM-CKD<br><br>ORDER |

Defendant car manufacturers move to transfer this class action to the Central District of California to be consolidated with a case filed there styled *Heber v. Toyota Motor Sales U.S.A., Inc.*, or in the alternative, to stay this action until *Heber* is resolved. Defs.' Mot. to Transfer or Stay (Mot.), ECF No. 15. Plaintiffs oppose the motion. Pls.' Opp'n (Opp'n), ECF No. 21. Defendants have replied. Defs.' Reply (Reply), ECF No. 26. The court heard oral argument on January 12, 2018, and thereafter submitted the motion. Following hearing, defendants submitted a notice of supplemental authority, which the court has reviewed. See ECF

1

No. 35.  For the reasons discussed below, the court finds this case should not be transferred or stayed, and so the motion is DENIED.

I. BACKGROUND

A. Heber

*Heber* is a class action filed in August 2016 in the Central District of California in which the plaintiffs allege certain Toyota vehicles were defectively designed because Toyota used soy-based wiring insulation that attracts rodents, with the result that the rodents chew through the wiring.  *See generally Heber v. Toyota Motor Sales U.S.A., Inc.*, No. 8:16-cv-01525-AG-JCG (C.D. Cal. Aug. 18 2016) (*"Heber"*).  The action includes twenty-one named plaintiffs from thirteen states, including California, who seek to certify state sub-classes consisting of persons who own or lease or previously owned or leased a "Class Vehicle."  Fourth Am. Compl. (*Heber* 4AC) ¶ 1, *Heber*, ECF No. 82-1.  The list of "Class Vehicles" includes fifteen Toyota vehicle models spanning various years from 2008 to present.  *Id.* ¶ 1 n.1.  The California plaintiffs assert eight claims: breach of express and implied warranty under the Uniform Commercial Code (UCC) and the California Song-Beverly Act; violation of the California Consumer Legal Remedies Act (CLRA) and Unfair Competition Law (UCL); common-law fraud; and violation of the Magnuson-Moss Warranty Act.  *Id.* ¶¶ 208–332.  The defendants' motion to dismiss plaintiffs' Fourth Amended Complaint, *Heber* ECF No. 82, is now pending before the *Heber* court.

B. Espineli

Plaintiffs filed this action in this court on March 31, 2017.  Compl., ECF No. 1.  Defendants filed this motion to transfer or stay proceedings on August 14, 2017.  Mot.  As noted, plaintiffs filed an opposition on October 20, 2017, and defendants replied on October 27, 2017.  Opp'n; Reply.

Toyota is a vehicle manufacturer and parent company of Lexus.  This putative class action arises from one central claim: Plaintiffs allege defendants used soy-based wire coating in the engine control wiring harness of their Lexus vehicles, which attracted rodents that chewed on the wiring, causing damage to the vehicles.  Opp'n at 4.  Plaintiffs assert Lexus

2

vehicles can lose functionality and safety features when wires in the engine control wiring harness are damaged by rodents, which poses a safety risk to both class members and the public at large. *Id.* The putative class includes: "[a]ll persons in California who currently own or lease, or who have owned or leased, any Lexus RX, GX, ES and LS model vehicle with model years 2007–2017," and the putative sub-class includes owners and lessors of the same models of vehicles "who submitted their Vehicle for repairs under the Vehicle's warranty for damage related to rodent infestation and incurred out-of-pocket expenses for such repairs after Lexus' refusal to cover repairs under the Vehicle's warranty." Compl. ¶¶ 58–59. Plaintiffs assert four claims including: violation of the CLRA; violation of the UCL; breach of implied warranty under the California Song-Beverly Act; and breach of express warranty, on behalf of the proposed subclass. *Id.* ¶¶ 67–106.

II. LEGAL STANDARD

    A. First-to-File

The first-to-file rule is a doctrine of federal comity that "allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court." *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). The rule "is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Church of Scientology of Calif. v. U.S. Dept. of Army*, 611 F.2d 738, 750 (9th Cir. 1979). In determining whether the first-to-file rule applies, a court considers the "chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Kohn Law Group, Inc. v. Auto Parts Mfg. Mississippi, Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). If this action meets the requirements of the first-to-file rule, the court has the discretion to transfer or stay the action. *Alltrade*, 946 F.2d at 622. The court also retains the discretion to disregard the first-to-file rule in the interests of equity. *Id.*

    B. Section 1404(a) Motion to Transfer Venue

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Accordingly, in deciding a motion to

3

transfer under § 1404(a), the court weighs the following factors in exercising its discretion: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988). The moving party bears the burden of demonstrating that an action should be transferred. *Commodity*, 611 F.2d at 279.

III. ANALYSIS

    A. First-to File

        1. Chronology of the Actions

There is no dispute that the *Heber* action was filed first, and thus this factor is satisfied but not dispositive. Mot. 5; Opp'n 5.

        2. Similarity of the Parties and Issues

In a class action, the court compares the classes, not the class representatives. *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008) (citing Cal. Jur. 3d Actions § 284); *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1147 (E.D. Cal. 2010) (noting it is "the classes and not the class representatives, are compared"). The Ninth Circuit has held that "substantial similarity of the parties" is required to satisfy the second prerequisite of the first-to-file rule. *Kohn*, 787 F.3d at 1240. In class action cases, district courts have required that the classes "represent at least some of the same individuals." *Adoma*, 711 F. Supp. 2d at 1148.

Similarly, the rule does not require identical issues or "exact parallelism," but requires substantial similarity of the issues. *See Kohn Law Grp., Inc.*, 787 F.3d at 1240. In order to determine whether the actions involve substantially similar issues, courts "look at whether there is 'substantial overlap' between the two suits." *Id.*

In the *Heber* action, plaintiffs seek to represent thirteen subclasses from thirteen different states, each including current or previous owners or lessors of a "Class Vehicle" that incurred damages related to a soy-wiring defect. *Heber* 4AC ¶ 198. In their fourth amended complaint, the *Heber* plaintiffs define "Class Vehicles" as: "the following Toyota vehicles with the model years ("my") 2008 to present: (1) Rav4; (2) Tacoma; (3) Tundra; (4) Camry; (5) Prius;

4

| | |
|---|---|
| 1 | (6) Corolla; (7) Highlander; (8) Sequoia; (9) Sienna; (10) Venza; (11) Yaris; (12) 4Runner; |
| 2 | (13) Avalon; (14) FJ Cruiser; and (15) Matrix." *Id.* ¶ 1 n.1. The proposed class of plaintiffs in |
| 3 | *Espineli* is much narrower and applies to a different model vehicle. Specifically, the putative |
| 4 | *Espineli* class includes only Californians who own or lease or previously owned or leased certain |
| 5 | Lexus vehicles. Compl. ¶¶ 58–59. Lexus vehicles are not listed as one of the "Class Vehicles" in |
| 6 | the *Heber* complaint, nor are Lexus vehicles mentioned anywhere else in the *Heber* complaint. |
| 7 | Rather, the *Heber* case focuses solely focused on Toyota vehicles. Additionally, the *Espineli* |
| 8 | action is focused only on the wiring for the engine control wiring harness. *Id.* ¶¶ 1, 9–13. The |
| 9 | engine control wiring harness is never specifically mentioned in the *Heber* complaint. *See* |
| 10 | *generally Heber* 4AC; Opp'n at 7. Thus, in this court's view, the parties and issues lack |
| 11 | substantial similarity. |
| 12 | Defendants' supplemental authority is in the form of a recent decision by a fellow |
| 13 | judge, transferring an Eastern District case to the Central District. *See Janelle Horne v. Nissan* |
| 14 | *North America, Inc. et al.*, No. 2:17-cv-00436 (E.D. Cal. Feb. 6, 2018). This case is |
| 15 | distinguishable from the case at bar because plaintiffs indicated the nationwide class of defective |
| 16 | Nissan vehicle owners in that case would be amended after discovery to specifically include the |
| 17 | vehicle owners identified in the Central District case. Here, there is no indication the very |
| 18 | narrowly defined class will be amended, and plaintiffs have signalled they have no plans to seek |
| 19 | such an amendment. |
| 20 | 3. Judicial Efficiency and Fundamental Fairness |
| 21 | Even if the requirements of the first-to-file rule are satisfied, "[t]he doctrine is |
| 22 | discretionary and, accordingly, the court may disregard it in the interests of equity." *Adoma v.* |
| 23 | *Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1149 (E.D. Cal. 2010). Fairness considerations and |
| 24 | equitable concerns can bar application of the rule, *Alltrade*, 946 F.2d at 628, and in any event |
| 25 | inform the court's decision. |
| 26 | Here, even if the first-to-file rule was satisfied, fairness and equity compels the |
| 27 | court's maintaining the case in this district. Both named plaintiffs in this action purchased their |
| 28 | Lexus from Lexus of Roseville in Roseville, California. Compl. ¶ 39; Opp'n at 12. Although the |

class may include California plaintiffs outside the Eastern District, for the class representatives and named plaintiffs in this action, who will bear the primary burden of assisting with litigation of the case, "the purchase of the vehicle, the issuance of the Lexus warranty, and the actions at issue . . . all occurred in the Eastern District." Opp'n at 12; *Red v. Unilever United States, Inc.*, No. 09-07855 MMM (AGRX), 2010 WL 11515197, at *6 (C.D. Cal. Jan. 25, 2010) (noting a court may relax the first-to-file rule if the balance of convenience favors the later-filed action)  Additionally, even if this case were transferred to the Central District, there is no guarantee it would be consolidated with the *Heber* action, and thus, no guarantee of any efficiency gained through transfer. Opp'n at 2–3.

   B. <u>Section 1404</u>

    In deciding a motion to transfer under § 1404(a), the court weighs the convenience of the parties, the convenience of the witnesses, and the interests of justice. 28 U.S.C. § 1404(a); *Savage*, 611 F.2d at 279. As noted, plaintiffs reside in the Eastern District. Toyota is moving its headquarters to Plano, Texas and so has no close connections with either the Eastern or the Central District. Mot. at 10. Plaintiffs indicate "the primary nonparty witnesses that have been identified are those service technicians, sales personnel, and others at the Lexus of Roseville dealership where Plaintiffs purchased their Lexus vehicle—i.e. those located in the Eastern District." Opp'n at 14. Based on the information currently before the court, the convenience of the parties and witnesses weighs against transfer.

    Generally, a defendant "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986). In class actions such as this one, however, a plaintiff's choice of forum is often accorded less weight. *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir.1987). Nonetheless, even in a class action lawsuit, "[i]n judging the weight to be accorded [plaintiff's] choice of forum, consideration must be given to the extent of both [Plaintiffs'] and [Defendants'] contacts with the forum, including those relating to [Plaintiffs'] causes of action . . . ." *Id.* (internal citations omitted). "In part, the reduced weight given plaintiff's choice of forum in class

6

actions serves as a guard against the dangers of forum shopping, especially when a representative plaintiff does not reside in the district." *Roling v. E*Trade Securities, LLC,* 756 F.Supp.2d 1179, 1185 (N.D.Cal.2010).  Here, because both plaintiffs reside in the Eastern District and purchased their Lexus vehicles in the Eastern District, there is no indication of improper forum shopping. Moreover, plaintiffs are not putative class members in the *Heber* action because the *Heber* action does not include owners of Lexus vehicles.

The relevant 1404 factors weigh against transfer.

IV. CONCLUSION

For the reasons stated above, the court DENIES defendants' motion to transfer or stay the case.   The court will turn next to the pending motion to dismiss (ECF No. 8).

IT IS SO ORDERED.

DATED:  March 30, 2018.

_____
UNITED STATES DISTRICT JUDGE