| | |
|---|---|
| MELINDA ESPINELI and MOHAMMAD MOGHADDAM, as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR SALES, U.S.A., INC., a California corporation; TOYOTA MOTOR CORPORATION, a Japanese Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | No. 2:17-cv-00698-KJM-CKD<br><br>ORDER |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Plaintiffs Melinda Espineli and Mohammad Moghaddam bring this putative class action lawsuit against defendants Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Corporation (collectively "Toyota"), alleging defendants should be held liable for damage caused by rats chewing on the soybean-coated electrical wiring placed in defendants' vehicles during manufacture and assembly, before sale to the public. Defendants move to dismiss plaintiffs' First Amended Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6). Mot., ECF No. 46; Mem., ECF No. 46-1. Plaintiffs have filed an opposition, ECF No. 52, and defendants have replied, ECF No. 54. The court held a hearing on the matter on February 8, 2019, at which

Ian Barlow appeared for plaintiffs and Amir Nassihi appeared for defendants. As explained below, the court GRANTS defendants' motion with leave to amend.

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed their original complaint on March 31, 2017. Compl., ECF No. 1. On August 9, 2018, the court granted defendants' motion to dismiss plaintiffs' complaint in its entirety. ECF Nos. 8, 38. The court granted leave to amend, and plaintiffs filed the operative First Amended Class Action Complaint ("First Amended Complaint") on September 19, 2018. First Am. Compl. ("FAC"), ECF No. 43. On October 17, 2018, defendants filed the pending motion to dismiss plaintiffs' First Amended Complaint. Mot., ECF No. 46; Mem., ECF No. 46-1. Plaintiffs filed their opposition on January 18, 2019, Opp'n, ECF No. 52, and defendants replied on February 1, 2019, Reply, ECF No. 54.

This putative class action arises from one central claim: Plaintiffs allege defendants used soy-based wire coating in the engine control wiring harness of their Lexus vehicles, which attracted rodents that chewed on the wiring, causing damage to the vehicles. FAC ¶ 1. Plaintiffs assert Lexus Vehicles can lose functionality and safety features when wires in the engine control wiring harness are damaged by rodents, posing a safety risk to both class members and the public at large. *Id.* The putative class includes: "[a]ll persons in California who currently own or lease, or who have owned or leased, any Lexus RX, GX, ES and LS model vehicle with model years 2007–2017 [(the 'Class Vehicles')]." *Id.* ¶ 66.

Plaintiffs contend defendants knew of the defect and fraudulently concealed it. *Id.* ¶ 32. In the First Amended Complaint, they assert claims for violations of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* FAC ¶¶ 74–114.

II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." The court may grant the motion only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114,

1122 (9th Cir. 2013). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), although it need not include "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But "sufficient factual matter" must make the claim at least plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). In a Rule 12(b)(6) analysis, the court must accept well-pleaded factual allegations as true and construe the complaint in the plaintiff's favor. *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

A claim grounded in fraud must be pleaded with the particularity required by Federal Rule of Civil Procedure 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (2003). The Ninth Circuit has specifically held that Rule 9(b)'s heightened pleading standard applies to claims of fraud under the CLRA and UCL. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citing *Vess*, 317 F.3d at 1102–05). This particularity requirement also applies to claims based on nondisclosure. *Id.* at 1126–27. Plaintiffs' CLRA and UCL fraud-prong claims rely on the First Amended Complaint's allegations of defendants' fraudulent omissions. *See* FAC ¶¶ 90, 110. Accordingly, plaintiffs' claims sound in fraud and must satisfy the pleading requirements of Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how" of the alleged fraudulent conduct. *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). In addition, plaintiffs "'must set forth what is false or misleading about a statement, and why it is false.'" *Id.* (quoting *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).

III. <u>DISCUSSION</u>

In its order dismissing plaintiffs' original class action complaint, the court determined that plaintiffs had not supported their CLRA and UCL claims with a "sufficiently pleaded misstatement or omission." Dismiss. Order, ECF No. 38, at 6. Defendants now move to dismiss plaintiff's First Amended Complaint, arguing plaintiffs have still not sufficiently pleaded a fraud claim based on a misstatement or omission. *See generally* Mot.; Reply at 2.

A. CLRA Claim

Plaintiffs raise claims under California's CLRA. The CLRA allows plaintiffs to state a claim for any "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." *Wilson v. Hewlet-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting Cal. Civ. Code § 1770(a)). The standard for deceptiveness is whether conduct is "likely to mislead a reasonable consumer." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680, 682 (2006) (quoting *Nagel v. Twin Labs., Inc.*, 109 Cal. App. 4th 39, 54 (2003)).

In the First Amended Complaint, plaintiffs allege defendants violated §§ 1770(a)(5), (7) and (9) of the CLRA by representing that "[the Class Vehicles] have characteristics or benefits which they do not have" and "are of a particular standard, quality, or grade when they are of another," and by "advertis[ing] [the Class Vehicles] with the intent not to sell them as advertised." FAC ¶ 79. Plaintiffs do not allege defendants made any affirmative misstatements; rather they rely on an omission theory of consumer fraud, alleging defendants "actively concealed and failed to disclose material facts about the true characteristics of the transaction leading to Plaintiffs' and Class members' purchase of the subject Vehicles." FAC ¶ 90; Opp'n at 12 ("Plaintiffs' UCL and CLRA claims are based on [defendants'] failure to disclose.").

To sustain a fraudulent omission claim under the CLRA, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006) (emphasis omitted)). Further, to state a claim for failing to disclose a defect, a plaintiff must allege: (1) a defect, (2) an unreasonable safety hazard, (3) a causal connection between the alleged defect and the alleged safety hazard, and (4) that the defendant knew of the defect at the time the sale was made. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1025 (9th Cir. 2017) (quoting *Apodaca v.*

*Whirlpool Corp.*, No. SACV 13-00725 JVS (ANx), 2013 WL 6477821, at *8 (C.D. Cal. Nov. 8, 2013)).

Defendants argue the court should dismiss the First Amended Complaint because plaintiffs have pleaded neither what the particular defect is in this case nor particular facts establishing defendants had a duty to disclose the purported defect. Mot. at 4–9; Reply at 2, 4. The court first addresses whether plaintiffs have sufficiently identified the alleged defect to meet Rule 9(b)'s requirements. Then, the court analyzes whether plaintiffs have pleaded facts sufficient to show defendants had a duty to disclose the alleged defect.

1. <u>Defect</u>

Defendants argue plaintiffs have not pleaded facts identifying the alleged defect with sufficient particularity. Mot. at 4–5; Reply at 4–6. Plaintiffs respond by arguing the First Amended Complaint expressly and repeatedly alleges the underlying defect. Opp'n at 12–13.

"[A]llegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged . . . ." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks and citation omitted). Claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations." *Swartz v. KPMG LLP*, 476 F.3d 757, 764 (9th Cir. 2007) (internal quotation marks and citation omitted). "Courts have dismissed causes of action sounding in fraud when the alleged defect is not well-defined." *Sciacca, v. Apple, Inc.*, No. 18-CV-03312-LHK, 2019 WL 331280, at *5 (N.D. Cal. Jan. 25, 2019) (citing cases).

Here, plaintiffs allege the defect is the "soy-based," "biodegradable" and "organic" materials "used to coat electrical wiring in the Vehicles electrical wiring harness." FAC ¶¶ 1, 2, 9. According to the First Amended Complaint, defendants previously insulated the electrical wiring in their automobiles with "petroleum-derived materials" but transitioned to "more easily-recyclable, biodegradable materials, including soy" over the past decade. *Id.* ¶ 10. Plaintiffs allege the defect is present in all Class Vehicles, as they "are equipped with wires in the electrical wiring harness . . . that are coated with biodegradable soy-based material." *Id.* ¶ 11. The First Amended Complaint then alleges this soy-based material "draws rodents to the engine

5

compartments of Class Vehicles that gnaw or claw away at, and through, the soy-based insulation covering vital wiring in the wiring harness . . . and expose or sever electrical wiring critical for the safe operation of the Vehicles." *Id.* ¶ 13; *see also id.* ¶¶ 1, 12, 15, 19 (same). Plaintiffs' First Amended Complaint thus specifically alleges a systematic design flaw present in all Class Vehicles, which attracts rodents that chew through the wiring, causing electrical and operational failures in the Vehicles. *Cf. Wilson*, 668 F.3d at 1145 ("As Plaintiffs do not plead any facts indicating how the alleged design defect, *i.e.*, the loss of the connection between the power jack and the motherboard, causes the Laptops to burst into flames, the District Court did not err in finding that Plaintiffs failed to plausibly allege the existence of an unreasonable safety defect.").

Defendants contend plaintiffs have not pleaded with particularity "the alleged deficiencies of soy-coated insulation" and assert the consumer complaints cited in the First Amended Complaint "do not support an inference that any increased risk of damage or actual 'defect' existed at all." Mot. at 4–5; Reply at 4–6. Therefore, defendants argue plaintiffs have not "provide[d] a sufficiently specific picture of what Toyota could have done to meet its disclosure requirements." Mot. at 4 (quoting *Heber v. Toyota Motor Sales U.S.A., Inc.*, No. SACV 16-01525 AG (JCGx), 2018 WL 3104612, at *6 (C.D. Cal. June 11, 2018), *appeal filed*, No. 18-55935 (9th Cir. July 12, 2018)).

Upon reviewing the First Amended Complaint and the parties' briefing, the court finds plaintiffs' allegations adequately describe the content of defendants' omission. The First Amended Complaint identifies a single component of the Class Vehicles—the "soy-based materials" used in the wiring insulation—and alleges that component "attracted rodents that would destroy the wiring and compromise the functionality and safety of the vehicle." FAC ¶¶ 40–42, 44–46, 60, 80–82, 84–86, 98–100, 102–04. At this stage of the proceedings, plaintiffs need not "allege more facts showing just how much more likely rats are to chew on soy coated wires." *Heber*, 2018 WL 3104612, at *4. Given that the wiring insulation is a single component of the Class Vehicles, and the alleged defect involves a flaw in that component, plaintiffs have satisfied Rule 9(b)'s requirements by plausibly alleging facts sufficient to give defendants notice of the alleged defect and defendants' alleged misrepresentations about the defect.

2. <u>Duty to Disclose</u>

A plaintiff can allege a duty to disclose by alleging the defendant (1) is in a fiduciary relationship with the plaintiff, (2) has exclusive knowledge of material facts not known to the plaintiff, (3) actively conceals a material fact from the plaintiff, or (4) makes partial representations but also suppresses some material fact. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997). "Omitted information is material if a plaintiff can allege that, 'had the omitted information been disclosed, one would have been aware of it and behaved differently.'" *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010) (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)). The court determines materiality from the perspective of a reasonable consumer. *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (citing *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003)). Plaintiffs contend defendants' duty to disclose the purported defect—that the soy-based wiring insulation attracts rodents, which then chew through the electrical wiring— arose under three theories: (1) partial representations, (2) superior or exclusive knowledge of material facts, and (3) active concealment of material facts. Opp'n at 12. Defendants assert plaintiffs have not pleaded sufficient facts to establish a duty to disclose under any theory. Reply at 4. The court analyzes each of plaintiffs' disclosure theories in turn.

a. <u>Partial Misrepresentations</u>

To avoid dismissal under Rule 9(b), a plaintiff alleging affirmative representations must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). A plaintiff arguing a duty to disclose additional facts arising from a defendant's misleading partial representation must also satisfy the Rule 9(b) standard. *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 987–88 (N.D. Cal. 2018) (dismissing plaintiffs' partial misrepresentation theory because plaintiffs did not identify with sufficient specificity the "misleading partial representations" and did not allege any named plaintiff actually saw the partial misrepresentations); *In re Apple Inc. Device Performance*

*Litig.*, 347 F. Supp. 3d 434, 462 (N.D. Cal. 2018) (finding plaintiffs did not adequately allege partial misrepresentation theory under Rule 9(b) because they did not "explain precisely how those statements are misleading"); *Gomez v. Carmax Auto Superstores Cal., LLC*, No. 2:14-cv-09019-CAS (PLAx), 2015 WL 350219, at *1, 8–9 (C.D. Cal. Jan. 22, 2015) (dismissing claim based on allegedly misleading representation of vehicle as "certified" because plaintiff did not plead "who, when, where, how, and what defendant told her about the certification of the vehicle"); *Eisen v. Porsche Cars N. Am., Inc.*, No. CV 11-9405 CAS (FEMx), 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012) (plaintiff relying on partial misrepresentation theory must "provide representative samples of . . . representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information").

Defendants assert plaintiffs have pleaded no representations with particularity. Reply at 3. In support of their partial misrepresentations argument, plaintiffs point to various Lexus websites, vehicles, brochures, signage and other advertising, marketing, maintenance and repair information. FAC ¶¶ 23–25, 40–42, 44–46. Plaintiffs allege these representations included Lexus's claim that "safety is a top priority" and that its "main goal is a vehicle that is exceptionally lean in its use of raw materials, its fuel and its impact on the environment." *Id.* ¶ 8. Plaintiffs also allege defendants' representations touted the innovative use of "materials," "new methods of making them," and innovative testing methods, as well as efforts to go "green" and provide consumers with vehicles "engineered to last." *Id.* ¶¶ 8, 10. Plaintiffs contend these representations were misleading because they omitted information concerning "the dangers associated with the soy-based insulation materials used on critical Vehicle wiring in the electrical wiring harnesses." Opp'n at 14.

These allegations of partial representations are not sufficiently specific, however, to satisfy Rule 9(b)'s particularity requirement. Plaintiffs have not identified advertising, marketing, or other materials they saw that promised the soy-based wire coating would not attract rodents, a predicate to plaintiffs' specific concealment theory in this case. *See* Fed. R. Civ. P. 9(b) (providing that "a party must state with particularity the circumstances constituting fraud or mistake"); *Kearns*, 567 F.3d at 1124 (noting "Rule 9(b) demands that the circumstances

constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong"; adding "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged" (internal quotation marks and citations omitted)). While the First Amended Complaint does refer to the websites for Lexus and its authorized dealerships, as well as other promotional and maintenance materials, *see* FAC ¶¶ 23–25, 40–42, 44–46, plaintiffs do not allege any named plaintiff actually saw or relied on any specific representations regarding the electrical wiring or its propensity to attract rodents. Nor do plaintiffs allege anything about the electrical wiring or its composite materials being displayed on the Vehicles themselves. Accordingly, plaintiffs still have not alleged any misleading partial representations with particularity. *See Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 984 (N.D. Cal. 2015) (under California law, fraud claim viable when defendant makes partial representation that is misleading because some other material fact has not been disclosed, but "[a] partial-representation claim requires [a plaintiff] to plead reliance on at least some misleading partial representations"—i.e., the plaintiff "saw or heard these partial representations and [was] misled by them in such a way that [the defendant] should have fully disclosed related information"). Therefore, plaintiffs have not adequately alleged defendants had a duty to disclose under this theory.

            b. <u>Knowledge</u>

"In order to give rise to a duty to disclose, a complaint must contain specific allegations demonstrating the manufacturer's knowledge of the alleged defect at the time of sale." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 927 (N.D. Cal. 2012) (emphasis omitted); *see also Wilson*, 668 F.3d at 1145 ("California federal courts have held that, under the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss."). Defendants assert plaintiffs have not sufficiently alleged Toyota's knowledge of the defective soy-based wire coating at the time named plaintiffs purchased their Lexus. Mot. at 6–9. Plaintiffs counter that the First Amended Complaint adequately alleges defendants knew of the purported defect. Opp'n at 16. Specifically, plaintiffs allege defendants

acquired knowledge of the alleged materials defect through the following means: (1) "numerous consumer complaints and [National Highway Traffic Safety Administration ('NHTSA')] complaints," (2) "repair orders from Lexus dealerships," and (3) "remedial steps taken by other car manufacturers, such as Honda" to "address similar soy-based insulated electrical wiring problems." FAC ¶¶ 16–17, 27, 29, 89–90, 107–08. Additionally, in their opposition brief plaintiffs argue defendants should have been aware that using "food" to coat electrical wiring would attract rodents because it is "common knowledge." *See* Opp'n at 1, 3, 6, 16, 18.

i. Common Knowledge

Plaintiffs' argument that defendants were aware of the alleged defect because it is common knowledge that food attracts rats is insufficient to establish defendants' knowledge here. On a motion to dismiss under Rule 12(b)(6), the court is limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Swartz*, 476 F.3d at 763). Plaintiffs have not alleged facts showing the insulation material qualifies as "food." The court does not consider plaintiffs' new factual allegations in their opposition to the instant motion.

ii. Consumer and NHTSA Complaints

Courts disagree on whether consumer complaints "in and of themselves adequately support an inference that a manufacturer was aware of a defect." *Wilson*, 668 F.30d at 1147. In *Williams v. Yamaha Motor Co. Ltd.*, however, the Ninth Circuit clarified that consumer complaints may support an allegation of presale knowledge of a defect in some circumstances. 851 F.3d at 1027. For example, the *Williams* court held consumer complaints supported a claim of presale knowledge when the plaintiffs specifically alleged defendants set up "a private internal complaint system" dedicated to "handling an unusually high volume of complaints specific to [the alleged defect]" and "describe[d] the manner in which it functions and the individual supervisor responsible for its management." *Id*. at 1028; *see also Cirulli v. Hyundai Motor Co.*, No. SACV 08-0854 AG (MLGx), 2009 WL 5788762, at *4 (C.D. Cal. June 12, 2009) (finding plaintiff had sufficiently alleged defendant's knowledge when plaintiff alleged defendant had "constantly tracked the [NHTSA] database").

10

Here, the consumer and NHTSA complaints cited in the First Amended Complaint do not establish defendants knew of the alleged defect before plaintiffs and proposed Class members purchased their Vehicles. First, plaintiffs do not allege particular facts showing defendants actually knew about these complaints when plaintiffs bought their Lexus. *See* FAC ¶¶ 16–17. The First Amended Complaint does not allege how or where these complaints were made, or otherwise allege how defendants could have been aware of them. *See Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO (PJWx), 2017 WL 1531192, at *15 (C.D. Cal. Apr. 13, 2017) (finding plaintiffs did not adequately allege knowledge when plaintiffs did not plead facts indicating defendant was aware of particular complaints or monitored particular websites). For example, regarding the NHTSA complaints, plaintiffs do not allege defendants monitored the NHTSA website, communicated with the NHTSA about complaints, directly received NHTSA complaints, or otherwise knew of the complaints prior to plaintiffs' purchase. Instead, plaintiffs allege only the fact that consumers made complaints. FAC ¶¶ 16–17. *Cf. Borkman v. BMW of N. Am., LLC*, No. CV 16-2225 FMO (MRWx), 2017 WL 4082420, at *5 (C.D. Cal. Aug. 28, 2017) (finding plaintiff sufficiently alleged defendant's knowledge of defect through consumer complaints to defendant's dealers and on third-party websites, aggregate data from dealers, consumer complaints to NHTSA and resulting notice from NHTSA, dealership repair orders, and other internal sources of aggregate information about defect); *Long v. Graco Children's Prods. Inc.*, No. 13-cv-01257-WHO, 2013 WL 4655763, at *6 (N.D. Cal. Aug. 26, 2013) (finding plaintiff sufficiently alleged defendants' knowledge of defects because consumers had complained directly to defendants, defendants had responded, and defendants had told NHTSA they were "keenly aware" of issue).

Second, plaintiffs allege "an insufficiently small number of complaints" to show defendants' knowledge of the alleged defect. *Williams*, 851 F.3d at 1027 n.8. Plaintiffs do not specify how many complaints were made about the defect, alleging only "numerous" complaints and citing a total of thirteen in the First Amended Complaint. FAC ¶¶ 16–17. This limited number of complaints and the absence of other allegations providing context for a conceivable inference that defendants knew of a widespread problem does not sufficiently plead defendants'

knowledge of the purported defect. *See, e.g.*, *Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-05452-JST, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018) (defendant's awareness of fifty-six NHTSA complaints over seven years did not show knowledge of alleged defect); *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) ("Awareness of a few customer complaints . . . does not establish knowledge of an alleged defect.").

Third, of the seven NHTSA complaints alleged in the First Amended Complaint, only three predate plaintiffs' purchase of their Lexus. FAC ¶ 17. Additionally, three of the six consumer complaints alleged in the First Amended Complaint are undated. Although post-sale evidence of a defect may support an inference that the manufacturer was already aware of it, *see MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1094 (N.D. Cal. 2014) (technical safety bulletins issued after plaintiffs' purchase "support the inference that [the defendant] knew of the alleged . . . defect at the time Plaintiffs purchased their vehicles"), here such complaints are insufficient to demonstrate defendants' knowledge, given the absence of allegations establishing defendants' particular awareness of these complaints. *See Tomek v. Apple, Inc.*, 636 F. App'x 712, 714 (9th Cir. 2015) (customer complaints made after plaintiff purchased product were insufficient to plead defendant's knowledge of defect at time of sale); *Wilson*, 668 F.3d at 1147–48 (undated complaints and complaints made after plaintiff's purchase do not support inference of defendant's pre-sale knowledge).

iii. <u>Dealership Records</u>

Plaintiffs have not sufficiently alleged how Toyota learned of the alleged defect from dealership repair records. Plaintiffs do not allege how the complaints were recorded and transmitted to management, the substance of information the dealers provided to defendants, the number of alleged warranty or other claims showing the existence of a widespread problem, or any other details supporting the conclusion defendants knew of the existence of the alleged defect. Indeed, the First Amended Complaint alleges only that defendants knew of the defect from "repair orders from Lexus dealerships" and "information from their dealership network." FAC ¶¶ 29, 89, 107. Plaintiffs allege no plausible facts supporting their assertion that defendants'

"dealership network" caused Toyota to know of a widespread defect. *See Herremans v. BMW of N. Am., LLC*, No. CV 14-02363, 2014 WL 5017843, at *17 (C.D. Cal. Oct. 3, 2014) (plaintiff's reference to dealership repair records, among other internal information, did not sufficiently allege defendant's knowledge of defect when plaintiff did not "identify the repair records, their volume, or how they revealed the defect"). For example, plaintiffs refer to a "spike" in "rodent infestation cases" in their opposition brief, but point to no factual allegations that an "unusually high" number or frequency of issues related to the defect were reported after Toyota began using the soy-based insulation. *See Williams*, 851 F.3d 1027 n.8. Plaintiffs' allegations are insufficient to plead knowledge of the alleged defect. *See Deras*, 2018 WL 2267448, at *4–5 (existence of internal monitoring system that tracked all complaints, warranty claims, and replacement parts data was by itself insufficient to allege knowledge of a defect); *Resnick*, 2017 WL 1531192, at *14 (same).

            iv.  Remedial Actions by Other Manufacturers

Plaintiffs assert Honda created "rodent-deterrent tape" in 2011 and at some point issued a technical services bulletin prescribing use of the tape to prevent rodents from chewing on wires in Honda vehicles. FAC ¶¶ 90, 108. Plaintiffs do not allege when or how Toyota learned about Honda's actions, nor do they allege facts showing how Honda's insulation is similar to Toyota's, apart from being "soy-based." *Id.* ¶ 90. *See Resnick*, 2017 WL 1531192, at *16 (different manufacturer's conduct regarding component part did not establish defendant's knowledge when plaintiff did not allege defendant knew about conduct, why it occurred, and why this knowledge would show defendant's own products were defective); *cf. Deras*, 2018 WL 2267448, at *5–6 (recalls by other manufacturers can establish defendant's knowledge of defect if defendant knows of recall and knows products have similar design). Therefore, the alleged actions by Honda are insufficient to establish defendants' knowledge of the alleged defect here.

For the above reasons, plaintiffs have not adequately alleged defendants had knowledge of any defect at the time of sale. Accordingly, plaintiffs have not shown that defendants had a duty to disclose under the exclusive knowledge theory.

13

### c. Active Concealment

Defendants assert plaintiffs cannot establish a duty to disclose under the active-concealment theory because plaintiffs do not allege any affirmative acts of concealment in the First Amended Complaint. Mot. at 9. Plaintiffs contend defendants "actively concealed" material facts about the soy-based electrical wiring insulation by telling consumers any wiring problems were the result of other external factors and by representing that the Class Vehicles were "safe." Opp'n at 18–19.

Absent a fiduciary relationship, allegations of active concealment must amount to more than "mere nondisclosure." *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 512 (1980). A claim of active concealment requires allegations of "affirmative acts on the part of the defendants in hiding, concealing or covering up" the alleged defect. *Lingsch v. Savage*, 213 Cal. App. 2d 729, 734 (1963).

Plaintiffs do not adequately allege active concealment. Plaintiffs first rely on allegations regarding statements to customers that "any problems in connection with the defects were actually caused by customers' failure to maintain their Vehicles properly and/or by environmental influences," and denials of warranty coverage for repairs related to the allegedly defective soy-based wire coating. FAC ¶¶ 22, 31, 54. Some courts have found allegations of nondisclosure combined with affirmative denials of the defect and denials of free servicing or repairs of defective parts sufficient to survive a motion to dismiss when plaintiffs have adequately alleged a defendant's knowledge of the specific defect. *See, e.g.*, *Valencia v. Volkswagen Grp. of Am. Inc.*, 119 F. Supp. 3d 1130, 1137–38 (N.D. Cal. 2015) (plaintiffs sufficiently alleged active concealment when they alleged defendant affirmatively denied existence of defect and claimed problem was driver error); *Apodaca*, 2013 WL 6477821, at *8 (defendant's nondisclosure of defect, combined with allegations that defendant "denied the defect when Plaintiffs called to request repairs or replacement dishwashers" was sufficient to allege active concealment); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1134–35 (N.D. Cal. 2010) (plaintiffs sufficiently alleged active concealment when they alleged, in addition to nondisclosure, that defendants told plaintiffs machines at issue "were not defective or denied free service or replacement of the

14

defective parts"). For the reasons stated above, however, plaintiffs here have not sufficiently alleged defendants had pre-sale knowledge of the defect. Therefore, plaintiffs have not sufficiently alleged active concealment based on denial of the defect or free repairs.

Plaintiffs' other allegations of active concealment are based on defendants' failure to disclose information about the defect and do not allege any affirmative acts. FAC ¶¶ 8, 23–25. *See Enea v. Mercedes-Benz USA, LLC*, No. 18-CV-02792-HSG, 2019 WL 402315, at *7 (N.D. Cal. Jan. 31, 2019) (plaintiff's allegations that defendants failed to disclose material information about a defect in their vehicles insufficient to state claim that defendants took affirmative action to conceal alleged defects). Plaintiffs do not allege defendants took steps to "suppress information in the public domain or obscure consumers' ability to gauge" the alleged defect for themselves. *Gray v. Toyota Motor Sales, U.S.A.*, No. CV 08-1690 PSG (JCx), 2012 WL 313703, at *10 (C.D. Cal. Jan. 23, 2012), *aff'd*, *Gray v. Toyota Motor Sales, U.S.A., Inc.*, 554 F. App'x 608 (9th Cir. 2014). The First Amended Complaint does not plead a duty to disclose due to active concealment.

Plaintiffs have not adequately alleged that defendants had knowledge of the alleged wiring defect or were under a duty to disclose information about the alleged defect under any of their three theories. Accordingly, the court GRANTS defendants' motion to dismiss plaintiffs' CLRA claim.

B. UCL Claims

Plaintiffs also bring UCL claims. California's UCL creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200; *see also Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 717 (9th Cir. 2012). "Although remedies under the [UCL] are limited to injunctive relief and restitution, the law's scope is 'sweeping.'" *Gutierrez*, 704 F.3d at 717 (quoting *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). Moreover, each "prong" of the UCL provides a separate and distinct theory of liability. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (citation omitted). Plaintiffs allege claims under all three prongs of the UCL. FAC ¶¶ 94–114.

15

### 1. Unlawful Prong

The unlawful prong of the UCL "borrows violations of other laws and treats them as unlawful practices," and "makes [them] independently actionable." *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 950 (2018) (internal quotation marks and citations omitted). Here, plaintiffs borrow violations of the CLRA to support their claims under the UCL's unlawful prong. FAC ¶ 96. Because the court finds plaintiffs have failed to adequately allege their CLRA claim, the court also finds plaintiffs have not adequately alleged a violation of the unlawful prong of the UCL.

### 2. Unfair Prong

"A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).

Plaintiffs contend defendants engaged in unfair conduct under the UCL by "fail[ing] to disclose the fact that the Class Vehicles pose safety risks and were defective . . . when they had a duty to disclose the safety risks and materials defects to consumers and instead falsely represented that the Class Vehicles were safe for consumer use." FAC ¶ 111. Plaintiffs' claim under the unfair prong thus overlaps entirely with plaintiffs' CLRA claim, and due to the same deficiencies discussed above—namely, plaintiffs have failed to sufficiently allege defendants had knowledge of the alleged defect, affirmatively misrepresented the defective nature of the electrical wiring, or actively concealed material facts—plaintiffs have not plausibly pleaded a UCL violation under the unfair prong.

### 3. Fraudulent Prong

"To state a claim under the fraudulent prong of the UCL, 'it is necessary only to show that members of the public are likely to be deceived' by the business practice or advertising at issue." *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1159 (N.D. Cal. 2011) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)). However, "when federal district courts have considered fraudulent prong claims based on representations about defective

products, they have generally required a plausible showing that the defendant knew of the alleged defect when it made the representations alleged to be deceptive." *Id.* at 1160 (citations omitted); *see also Baba*, 2010 WL 2486353, at *7 (dismissing UCL claim when plaintiffs did not adequately allege defendants "knew of the alleged defects at the time [the plaintiffs] purchased their computers or contacted customer support"); *Neu v. Terminix Int'l, Inc.*, No. C 07-6472 CW, 2008 WL 2951390, at *3 (N.D. Cal. July 24, 2008) (dismissing complaint when plaintiff failed to sufficiently allege defendants knew statements were false at time they were made). As described above, plaintiffs have not sufficiently established defendants were aware of the alleged defect in the soy-based coating at the time plaintiffs purchased their Lexus. Therefore, plaintiffs have not sufficiently pleaded a UCL claim based on fraud.

Plaintiffs have failed to adequately plead violations of each prong of the UCL. Therefore, defendants' motion to dismiss plaintiffs' UCL claim is GRANTED.

        C.      <u>Leave to Amend</u>

When a motion to dismiss is granted, a district court must decide whether to grant leave to amend. Generally, the Ninth Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g.*, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). A court need not grant leave to amend, however, in cases when the court determines permitting a plaintiff to amend would be an exercise in futility. *See, e.g.*, *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

Here, while deficiencies remain in plaintiffs' CLRA and UCL claims, plaintiffs have sufficiently alleged a design defect that could form a basis for these claims proceeding. Additionally, plaintiffs specifically identified and quoted alleged partial misrepresentations made by defendants in their First Amended Complaint. Because plaintiffs may be able to allege necessary facts establishing how or where plaintiffs heard or saw these partial misrepresentations, as well as defendants' pre-sale knowledge of the defect, the court concludes granting leave to amend would not be futile. Therefore, the court grants plaintiffs leave to amend. *See Heber*,

2018 WL 3104612, at *7 (granting defendants' motion to dismiss and denying leave to amend in case involving same claimed defect in electrical wire coating in Toyota vehicles only after plaintiffs' fifth attempt at amending complaint).

IV. CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion to dismiss plaintiffs' First Amended Complaint.  The court grants plaintiffs leave to amend only as to their CLRA and UCL claims based on allegations of defendants' pre-sale knowledge of and partial misrepresentations about the defect.  Any amended complaint shall be filed within twenty-one (21) days.

IT IS SO ORDERED.

DATED: May 24, 2019.

_____
UNITED STATES DISTRICT JUDGE